I'd like to once again thank very much the Honorable Justice O'Connor for graciously agreeing to sit with us these last two days, yesterday and today, and hear the cases and help us out. She's really graced our circuit with her presence and I hope we'll get you back to it. Thank you very much. Our first matter is U.S. v. Babchinetskiy. Good morning. May it please the Court. My name is Peter Goldberger. It's my privilege this morning to represent Yakov Babchinetskiy, who was the defendant below. And it's a special honor to appear again before you, Justice O'Connor. I had the privilege of being appointed in a CJA case in 1990 by the Court and arguing. It's good to see you again. I'd reserve two minutes for rebuttal. There are two fundamental errors in Mr. Babchinetskiy's sentencing that require a resentencing. And the general waiver of his right to appeal does not apply to either of them. This Court has long recognized that a defendant has a right to be present when the sentence is imposed, and that the judge has a concomitant and important duty to be, to pronounce that sentence in the defendant's presence. So why isn't this the kind of technical correction that the rules allow with 35A? Well, for the reasons that we discussed in the brief, and in particular in the reply brief, the attributes, the importance of the defendant being present when the sentence is fully imposed is not just a matter of technicality under the rules. It's a fundamental attribute of due process at sentencing. It's the right to This Court has recognized that in a number of cases, and I would suggest that it would be necessary to overrule several of this Court's cases to reach that decision. Which one specifically? Given the kind of error in the technical correction here, which case would we have to overrule? Most directly, the Amar case in 1990, a decision written by Judge Sloviter, as it happens. Now, the question is, did the rules, as amended in 1991, the Rule 35 amendment, which we mistakenly said in the brief was a 1987 amendment, but it's a 1991 amendment of Rule 35, and then a related amendment in 1998 to Rule 43, which is very important, not mentioned in the government's brief, which says that a Rule 35 correction can be made outside the defendant's presence. And I say that although it's not favorable to us, because it's important to recognize that this is what the rules say. Do those rules, those rule amendments, overrule this Court's cases, which have recognized the importance of the defendant's presence, even when the sentence is being amended to correct an obvious illegality? So, we suggest that the Court not construe the new wording of Rule 35, new in 1991, words of Rule 35, to reach this kind of error. What the rule says is, arithmetic, technical, or other clear error. Let's focus on that last part, and I know you're arguing that we focus on the first two limitations, mathematic, technical, and I would agree that a technical correction is something less than changing an illegal sentence to a legal sentence, even if the mechanism for making that change might be arguably technical. But the third part of that phrase, clear error, why wouldn't this clearly fall into that category, especially since at the sentencing, Judge Davis did, at one point in the colloquy, correctly inform the client about the maximum sentences on the various counts? Well, the starting point for construing other clear error should be the doctrine of a justum generis. So, another clear error can't be looked at in isolation from the mathematical, or arithmetic, I think is the word, arithmetic and technical. It has to be clear in the way that an arithmetic or technical error is clear. That is, a non-discretionary, a non-discretionary is the key, a non-discretionary, simple, mechanical kind of correction. Here, the judge had discretion what to do on those other counts. He did not have to impose concurrent, underlapping, so to speak, maximum sentences. He could impose a different sentence. He might, looking at the whole package, indeed, have imposed a different sentence altogether, if at that moment, and we have to assume that he knew what he was doing when he did it. At that moment, he thought there were four counts that would carry such severe sentences, but there were not. Three of the sentences imposed were in excess of the statutory maximum for those counts. You made them consecutive, though. That argument seemed to me to have a great deal of weight, but if it's concurrent, and we still have to get to the plain error issue, but let's jump over that for a second. If the sentences are all concurrent, what difference would it make, and why wouldn't the fact that the concurrent sentences fit squarely within Rule 35 of A's other clear error? Because, in a sense, it is a technical correction. I understand your argument that it can't be technical if it makes an illegal sentence, a legal sentence, but again, if that transformation is done by a technical correction, what if a decimal point were out of place, and you move that decimal point? Now, that's merely an arithmetical... You said the sentence on count one is this, and on count two is that, and count three is that, so the total sentence is, and it gives a number which is not the sum of one, two, and three. You see, I've seen more than one of those. That's another example of the kind of error that could be corrected. That's an arithmetic error, or the judge says, I find this, that, and the other guidelines apply, and your total offense level is this, but it isn't that if you add up the findings that the judge made.  Well, weren't all these errors corrected, in effect? So, the error that was made here was... Here, today, is there some current problem with them? The amended judgment that was entered nine days after sentencing... Yes. ...is lawful with respect to the statutory maximum sentences. That's correct. It's not lawful with respect to the rest of... So, what are we fighting about today? What we're... I just don't understand at all why you're here. What the... Well, first, the judgment is not lawful as to the restitution. So, there's the second issue. But on the first issue of the maximum sentences, the judge changed an illegal sentence to a legal sentence at a time and in a way which is not authorized by the rules, and that's why we're here. The remedy for that... But you want some technical thing. You want the defendant back in the courtroom and recited all over again? Is that what you want? No, we want the defendant back in the courtroom to be resentenced where the defendant will have a chance to show post-defense rehabilitation, to give a new allocution, and possibly to update the sealed aspect of the case as well, all of which could readily lead to a different sentence. And this is, as the Supreme Court said in Pepper, not a windfall. This is a natural consequence of a reversal, even if the reversal is for an unrelated reason, that the defendant may have an opportunity at the resentencing to achieve, through the normal process, the human process, not the technical process of sentencing, a shorter sentence. So... But, you know, in terms of the view about hate events, cases that you rely upon, those were cases where at the time of the initial sentence there was information put before the judge that the judge ignored incorrectly. Or actually, in the other case, in Salazar, I guess it was, there was an attempt to put the evidence before the court, and the court ignored it. What we have here, though, is a situation where I don't... I did not look at the entire sentencing transcript. I'm assuming from the way the briefs are worded, there was no attempt at the original sentencing to put before the court any evidence of rehabilitation. I guess you're going to say, well, at that point there wasn't any rehabilitation because he hadn't been incarcerated yet, and the period that you want to bring to the court's attention, that you couldn't do that because he hadn't had the opportunity yet. I understand. What went wrong at the sentencing was the defendant's allocution. The defendant is not an English speaker, not a good English speaker, hardly at all. It was through an interpreter. He made a very bad impression on the judge, and I think by bad luck, not because he's a bad person who was saying the wrong thing. Judge Davis did not understand what he was saying, and he made a bad impression, and I think he could make a much better impression if he expressed himself better. Okay, but that's not Pepper. No, it's not exactly Pepper, but Pepper is not limited to the post-defense rehabilitation setting. I think Salinas-Cortez, the case you were referring to, your recent decision on the scope of resentencing does address that, that it's not limited to a post-defense rehabilitation justification. I don't think anything you're saying is going to change the sentence. Why would it? He got the 100 months, either way. It's not so much what I'm saying that would change the sentence, it's what he would say and might say at a resentencing. And that's when he's standing before the sentencing judge, not me standing before an appellate panel, is the moment. And this is so profoundly recognized in this court's cases, in Judge Becker's cases, in Fox and Bennett in particular. The talk about the significance of that eyeball to eyeball aspect, including at a resentencing in Fox, where the resentencing was ordered for a reason not related to what happened at the resentencing. But that was ensued de novo resentencing. And there was a full de novo resentencing. And this gets to the plain error aspect of your question, your previous question, Judge McKee. Every one of this court's cases where you have found an illegality due to an error in the maximum sentence or the general sentence, the more analogous cases, you have found plain error. The court has found plain error. It's typical that these come up on plain error. I mean, if someone noticed the mistake when it was being made, surely the judge would fix it, right? This was not the kind of error that seriously affected the fairness, integrity, or public reputation of the proceeding. The sentence of 100 months wouldn't change. I mean, it's just, it's the strangest argument I've heard in a long time. I'm shocked, frankly. Okay. Well, I don't know that I'm gonna persuade you that it isn't strange, but the Third Circuit has regularly found plain error justifying a resentencing where there were concurrent sentences, some of which were illegal, based on the reputation of the courts. Justice, the points are a very good one. Because if you look at what we say constitutes plain error, I mean, this is, again, not the kind of miscarriage of justice where we're simply, take your pepper argument aside, we would be just sending the court, this case, back to the judge to basically use whiteout and correct the, change the date and use whiteout and change the language in what he had already done within the time frame allowed by the rule. I'm not presuming that the same sentence would be imposed. This was by no means a generous sentence. It, it was resulted from the allocation miscommunication. So I, I won't, I don't accept that if the sentence would be mechanically imposed in the same way, the sentence is not mandatory. And the rep, the, the reputation and integrity of the courts is an equal factor in the discretionary prong  that when, if for the court to send the message that sentence can be imposed. In disregard of the statutory maximum on three out of four counts. And it's always just a technicality. I don't see how the sentence would change or should change. And instead, you've dragged the courts into something that is just almost pointless. I don't understand it. Well, let me also, may I also talk about the, the second issue for a, for a second? Yes, I think you'd better. The, the restitution issue it was, restitution over $4 million was imposed in disregard of every statutory provision that governs the imposition of restitution. But there again, looking at the plain error, the dollar amount he has to pay, the schedule with which he has to pay it, remains unchanged. The issue is who gets, who gets how much of that X amount, but the X remains X. Again, that's not necessarily so. If it had been done correctly, the judge might have recognized that with 750, 705 used cars sold, it might be just the kind of case that's discussed in subsection C3, where complication and delay would outweigh the imposition of time on the sentencing process, and the judge would not impose the whole restitution. What the judge did instead was defer the whole restitution problem to the government and say, the government will figure out restitution. The court cannot defer its obligations to the, to the government to avoid a problem that Congress has said to deal with in a different way. You say some time, I think. Thank you, yes. Okay. Good morning. May it please the court, my name is Linda Marks and I represent the United States. I want to point out one error on two pages in the, in the government's brief at the outset, your honor, regarding the restitution issue. And that is that the government, I believe, stated that the court ordered that the restitution was to be payable immediately. That was not what the court ordered. The court ordered the $400 special assessment to be paid immediately and set out a schedule of payments for the defendant to make while on supervised release. And the court pointedly did not set out a schedule during the time of incarceration. I want to first, your honor, address the issue and, and make a couple of points clear about this first issue raised by the defendant about the plain error, that the cases relied upon by the defendant, where this court has, in fact, remanded for resentencing because of an illegal sentence, were cases where there was a very, very limited remand, and there was no amended judgment in this case. Rule 35 and Rule 43 act in conjunction with one another to provide for exactly what happened in this case. Judge Davis realized that there was an error, a clear error, in accordance with Rule 35. And went ahead with, and nine days after the oral pronouncement of sentence, issued that amended judgment, maintaining the 100 month sentence and max, giving the maximum sentences for the other three counts. What about the argument we have to read plain error in context with a language technical and mathematical, and will we have a change in the sentence which transforms what had been illegal into a legal sentence, and that cannot possibly be, quote, a mere, close quote, technical or mathematical correction. It's got to be something substantive, something, it's got to be something more than that, and therefore, it's outside of Rule 35A. Well, your honor, the advisory committee notes to the 1991 amendments as, which were mentioned, those amendments were mentioned by, my counsel, opposing counsel here, did in fact state that Rule 35 was to be used not to reopen issues, but in cases where there would most certainly be a remand for error. So, that is in fact what Judge Davis did. He was trying to avoid this whole process, as Justice O'Connor has pointed out, of why we're here today. He took it upon himself to correct that clear error that he made in the sentencing. It was clear that his intention was to give a lawful sentence. He made that clear at the plea colloquy when he said, I have no intention to give you an illegal sentence. He went over the maximum sentences permissible, and there was an error certainly made in the oral pronouncement of sentence, but that 100 month sentence for wire fraud remained, and I believe would remain, should there be a remand. What defendant is trying to do is get a second bite of the apple. And he makes it very clear, both here and in his brief, that he wants another chance to re-argue and re-open the sentencing. And what happened on the Dixon remand and the Gunter remand was that when there was an illegal sentence, the remand was for a very, very limited purpose, not to reopen the entire sentencing, but for the court to clarify the sentence. And in the Dixon case, when there were two counts that could carry a maximum sentence of 60 months, and the sentencing court had originally given 75 months on remand, the court gave a 60 month sentence and a consecutive 15 month sentence, totaling 75 months. On the Gunter case, the court had one, there was one count that the original sentence was in excess of the statutory maximum on remand. That one count, just the one count, was remanded for clarification. But what appellant wants to do here is reopen the whole kit and caboodle, as it were, and re-argue this entire sentencing process. What about the restitution? I mean, that clearly was in violation of the requirements set forth in the statute, in the rules. Well, what appellant has argued is that there was a miscarriage of justice here. And I don't think that government does not believe that the court's error rises to that level of miscarriage of justice. The court imposed an amount of restitution that the defendant had agreed to pay for $4 million. That amount had been based on the average fraud loss for the vehicles, the 700, over 700 vehicles involved in this case. And so what, the only thing that the defendant is not aware of is to whom the restitution is paid. Is the 4.1 million figure in the plea agreement itself? Yes, it is, Your Honor. There is a clause in the plea agreement that says the defendant may be ordered to pay up to $4,098,000. That's very different. 61. Two or four. Well, as much as I believe it says, and I can get that. But again, that's still very, very different. What if the actual figure was a dollar? In fact, there was a discussion at the colloquy, at the sentencing, Your Honor, where counsel for the defendant made it very clear he wanted to make restitution, and he wanted to proactively make restitution. What the appellant is asking for now is a schedule to make payments while he's incarcerated. That's, Judge Davis set that aside and didn't want to order restitution. So he's actually asking, inexplicably asking for an order. Making him, ordering him to, giving him a schedule to make payments during the period of incarceration. Judge Davis started the restitution schedule when he, the defendant was released from prison. But isn't it a big difference if you, if I agreed to pay up to $4.1 million, or as much as, same difference, $4.1 million, it's very, very different than agreeing to pay $4.1 million. Because it may well be that I'm thinking, and my client and my attorney has told me that the only amounts that they can demonstrate a loss for are $2.5 million, or $750,000, whatever the number is. So I'm willing to concede when I plead guilty that this is my maximum exposure, but I realistically know that if put to the proof, the government can't establish what they claim the maximum exposure to be, they can only establish something substantially less than that $4.1 million figure. No, Your Honor, because that was, that was an amount based on the loss figure for the 705 vehicles, and as the court pointed out, not only are those 705 initial victims extant, but there are waves of other people who are victims, insurance companies, other buyers of these vehicles as they get transferred down the road, automobile dealers that have had to pay out of pocket. To reimburse customers. So this is an ongoing crime. There can be no more than $4,098,000. And as part of the plea agreement, this was a negotiated term. This was something that he agreed to make that much restitution. He, in fact, offered at the sentencing to put a house on the market and pay that money into the court's registry to start a restitution payments. That has not occurred, Your Honor. So you're basically saying that even if the amount, actual amount is $3 million, if you agreed to pay up to $4.1 million, being put to the task of paying the amount you agreed to pay up to, even if the proof doesn't substantiate that, can't amount to a miscarriage of justice, because you've agreed, you've basically exposed yourself to that X figure of $4.1 million. Anyhow, even if the government had to itemize things that was less than $4.1 million, there's no miscarriage of justice because you basically, either foolishly or maybe wisely, you agreed to that exposure. That's what you're arguing. Well, and that's what this court has found. In fact, in one of the cases cited, Your Honor, where there was an incorrect order of restitution that included legal fees. And this court found that was an error, but it did not rise to the miscarriage of justice under the plain error standard. And that's what we're looking at here, is plain error. So, for the appellant to win, he has to show that the result would be substantially different. That there would be a reasonable probability of the result being different. What would happen is there would still be a $4 million restitution order in this case because of the amount of victims here. So, it's the government's belief that the appellant has not gotten to that plain error standard where he can show a miscarriage of justice and that there would be a substantial difference in the restitution order. It's not- I didn't think about that until just this second, but I'll ask Mr. Goldberg about it. In a sense of the catch-22, because under Rule 35A, for us to conclude that Rule 35A doesn't allow for the amendment here, we have to find that what happened here was not plain error. But in order for him to get us to look at the question, he has to show that what happened here is plain error. As far as the restitution goes, that- As to both, really. Well, the restitution order was not changed, Your Honor. The restitution is different. As to Rule 35A, it's, on the one hand, it's got to be plain error, but then if it is plain error, it falls under Rule 35A as plain error. Well, not plain error, but clear error. Clear error, something that the- What's the difference? Well, something that the court recognized was error that could have been, that could be changed and would be changed upon a remand from this court. I don't know what you're arguing. Are you saying that there was error, but it was not plain error? Or are you saying there was no error because the court amended its judgment? What are you arguing? Well, I'm saying- It's not clear to me. I'm sorry, Your Honor. What the government is saying is that there is no plain error here. Well, you say there was error, but it wasn't plain. That is correct. There is error, but it was not plain, Your Honor. The court amended its judgment. It used Rule 35 in the context of Rule 35 and Rule 43, where a court can, in fact, resentence issue a, resentence a defendant without the defendant's presence to correct a Rule 35 error. And that's what happened here. There would be no difference. There would be no opportunity for expanded resentencing hearing. If this court did anything, it would be to reissue that amended judgment, which has already been issued as an amended judgment twice. Did the district court below give a schedule for restitution payments? It did, Your Honor, starting with- That wasn't clear to me either. I thought the district court said that government would provide a precise restitution schedule. No, what the court did order, both at the sentencing, orally at sentencing and committed to writing in the amended judgment, was a restitution order of $250 per month, starting 30 days after the defendant was released from prison, while he was on his three years of supervised release. So that was very clear schedule. I think when the court said schedule, he meant the names of the victims. And that's something that in these multi-defendant, hundreds of defendants and hundreds of victims, I should say, Your Honor, cases that is routine, I would say, to submit to the court. And the court, in fact, already had, from a co-defendant's sentencing, the complete list of victims. The joint and several liability issue, is that here? Whether or not the money that the defendant was to pay was in addition to, or that it was jointly with the other defendants in this case who pled? It wasn't ordered here, Your Honor. But again, the court's failure to impose that does not rise to the miscarriage of justice. This defendant, in fact, agreed to make that restitution, had no objections at the sentencing to making that restitution, and didn't raise the issue, timely raise the issue at the sentencing. Thank you very much. Thank you, Your Honor. It's the step, to take seriously your question, Chief Judge McKee. Which one? About all of them, but in particular the one on plain error. Just take one of them. The relationship of the clear error to the plain error, because I think that's tricky. It's otherwise clear error under Rule 35. But the first step of a plain error analysis is that there be error, which is apparent and clear in that sense. Mm-hm. But the way clear is used in Rule 35 has to have a technical and limited meaning. Otherwise, it defeats the whole structure of finality of sentencing and the requirement that the sentence be imposed in the defendant's presence. So we have to give a very narrow office to the clear, as used in Rule 35A. And this court's application of plain error doctrine calls for error to be apparent or clear, in the other sense, in a more relaxed way, that it finds error in the ordinary way of finding error. And then goes on to the other criteria that we've been mostly talking about for plain error. The government is relying mostly on arguments that it never made in its brief and never developed in its brief. And I don't think the court should reach out to decide difficult questions like the scope of Rule 35 and whether prior precedents have been overruled by not quite on point amendments to the rules in a case in which the government hasn't offered real, hasn't offered briefing. But we can affirm this by any reason. Yes, but I'm suggesting that the court's discretion should be informed by whether you have everything you need from the parties. But not relying principally on that. Do we want a second bite at the apple? Of course we want a second bite at the apple. That's why people bring sentencing appeals often on technical issues. But, and Salinas-Cortez tells us that that's generally the presumption. The Dixon case, on which the government relied, predated Booker. So the defendant had a lot less discretion at a resentencing then, than the judge has now. Thank you very much. We'll take both, we'll take the matter under advisement, I think also.